Chief Justice Robertson
delivered the Opinion of the Court.
Henry Pirtle filed a bill in chancery against Shadrack Penn, alleging that they were partners in the publication of uPirtle*s Digestthat Pirtle, as author, was to furnish the manuscript, and Penn, as mechanic, was to execute the printing and binding, and each to be entitled to half of the proceeds to be derived from the sale of the books; that Penn was not bound to commence the printing unless he should be satisfied that the public patronage would be satisfactory and sufficient; that the state subscribed for five hundred copies, and individuals for two hundred and fifty copies; and that, afterwards, Penn had printed two thousand copies, and bound about half of them; but that, after dividing equally the gross sum *248 paid by the stale for five hundred copies, he had refused to permit Pirtle to have any control over the books, or any participation in the sale of them, — alleging, for the first time, that he was entitled only to half of the neat profits, after deducting the cost of the printing and binding, which had not yet been wholly reimbursed; and lastly, that Penn was insolvent, and therefore praying for an account of sales which had been made, and for an injunction restraining further sales, and for the appointment of a receiver.
Bill dismissed If appeal.
There should be no appointment of a receiver, or interim manage ment, under the chancellor, in a suit between part ners, in which there is no prayer for a dissolution; and, .a bill for an account, while the partnership continues, will not be sustained, without such prayer, in general; but in some cases it may.
A court of equity may compel the specific execution of a partnership contract; and may restrain one partner from persisting in a course jeoparding the rights of the other, or depriving him of his due share in the direction of the business. t The terms of a partnership must be taken to be according to the deduction of law from the facts agreed in the pleadings, when there is no other proof. And— Where, what the partners, respectively, or either of them, put into the joint stock is unknown, or was of such a nature that the value cannot be estimated, the presumption is, that they are equal partners, who are to share alike in the profit and loss, and final division of the stock. As, where one furnishes a manuscript, and the other agrees to publish it — nothing else appear ing: the presump tion is, that the manuscript, and the printing fyc. were, in their estimation, of equal value, — and the books, or their proceeds, to be equally divided.
*248 Penn, in his answers to the bill and amended bill, admitted the partnership as alleged, with only one material qualification, and that is, that his personal supervision and the interest on his capital expended in the publication were, by the agreement, to be a set off against Pirtle’s skill and labor in preparing the manuscript, and that the neat profits only were to be divided, after reimbursing the amount expended in the printing and binding and in the purchase of materials; denied that he was insolvent, and after exhibiting a general account, insisted that Pirtle had received about as much as he had himself received.
The Circuit Court having, on final hearing, dismissed the bill, this appeal is prosecuted to reverse the decree.
As there was no prayer for a dissolution of the partnership, interim management, by a receiver, or otherwise, under the control or direction of the court, was not authorized by the established rules and usages of courts of equity. Gow on Part: 120; Ibid 139; Cary, 32.
And it has been said that, without a prayer for dissolution, a court of equity will not entertain a bill for an account, because such bills might be annual, or of indefinite recurrence.
But both principle and authority tend to the conclusion, that a bill for an account between copartners, may be maintained without a prayer for a dissolution of the partnership, if there be any good reason for compelling an account and settlement. Cary, 34 — Gow, 120 — 136.
A court of equity may, moreover, conapel a specific execution of a partnership contract, and may, sometimes, enjoin a partner from persisting in improper con *249 duct, jeoparding the rights or derogating from the power or authority of his co-partner, and when the latter, if he can be protected and secured by injunction, does not desire a dissolution, but prefers a continuation of the partnership, according to the spirit and end of the association.
In this case, though there is no prayer for dissolution, yet, as Penn has been selling the books, and does not deny that he refuses to permit Pirtle to control or participate in the sale of the residue, we think the Circuit Court had power to decree, and ought to have decreed, some relief, if the allegations of the bill as to the terms of the partnership be true.
As there was no written memorial, nor any evidence aliunde, of the contract of partnership, its terms must be settled as a deduction of law from what the parties have agreed in their pleadings.
The parties agree, that one was to furnish the manuscript, and the other was to print and bind it; but they disagree as to their proportion of interest in the gross proceeds.
Upon these facts alone, the law decides that what each contributed was his share of the joint capital, that their respective contributions were, by themselves, deemed equivalents, and that therefore each of them is entitled to an equal interest in the books, and in their gross vendible value — Gow, 9—10; 3 Kents Com. 28—9; Honore vs. Colmesnil, 1 J. J. Mar.—The general conclusion of law, in the absence of any fact to the contrary, is that “the losses are to be equally borne and the projitsequally divided.” Kents Com. supra.
But, as “profits” are only what remains of the avails of the concern after defraying incidental expenses and reimbursing the capital, the counsel for Penn insists, that the rule of law applied to the facts of this case, will entitle Pirtle to only one half of the “neat projits,” after deducting a just compensation for materials, printing and binding; and that, consequently,, Penn’s understanding of the express agreement, and the legal interpretation of the character of the partnership, are the same. This argument would be sound if the fact which it pre *250 supposes were admitted; but the assumed fact — to-wit, that Penn’s capital exceeded that of Pirtle, to the extent of the value of the materials, printing, and binding, has no existence in proof or in presumption of law. If one partner contribute a thousand dollars and another contribute five hundred, nothing else appearing, equity Would fix a corresponding ratio of interest, and of loss . , and gam between them.
contribute^cTSe joint stock in •unequal propor.tions, as where dollai-s^a-n/the ■other 500, — noini — the^hareof each, of the prostoclfat the aíí solution, will be what °lieContributed.
productions of genius or of knowledge are scarcely appreciable: the value of writing a book must necessarily be uncertain before publication. But that Pintle’s manuscript and copy right were of some value, and of considerable value too, and were so considered by both parties, cannot be doubted. The precise amount of the actual value was not only unknown, but unascertainable when the contract was made. Perhaps it exceeded the amount of all the cost of printing and binding; and it is far from being improbable that it did. But it is sufficient only to observe, that the law cannot decide, that the contributions of each partner were not of equal value, or were not estimated by themselves as equivalents. And therefore, in estimating profits, nothing is to be deducted in favor of the one or the other party for capital or for excess of contribution to the joint stock.
This deduction of law is fortified, rather than weakened, by extraneous facts. From the pleadings, it must be taken as admitted, that by the contract of partnership, Penn was under no obligation ever to commence the publication, unless the patronage to be obtained, should, in his judgment, be sufficient to ensure his indemnity. The state afterwards -subscribed for five hundred copies, which, added to two hundred and fifty copies subscribed for by individuals, would, at eight dollars a copy, bring the gross sum of six thousand dollars. -But it seems that the amount actually subscribed was six thousand three hundred and eighty dollars; the half of which, towit, three thousand one hundred and ninety dollars, was, according to any hypothesis, assured to Penn before he began the printing, or was under any obligation to begin it; — -and which sum was, according to *251 the proof, at least equal to the actual cost of printing and binding two thousand copies, including the cost of materials.
Two partners di» agree as to their respective interests in the stock, of which one retains the exclusive control, under pretence that a certain amount of the proceeds is to be appropriated to his separate use, before any division takes place; the other — it appearing that their interests are equal —may have a decree for an account, and restraining orders, Ifc. to secure to him, his rightful share in the control and proceeds of the business.
Then, according to these facts, Penn, if he were entitled to only half of the books or of their value, was sure of being reimbursed, and of then having left for 'his remaining interest in the books, after supplying the subscribers, six hundred and twenty five copies, which, at eight dollars a set, would be worth five thousand dollars,, which, or whatever that number of copies would sell for, would be clear profit.
Thus, supposing the contract to be, as Pirtle avers it was, and as the law presumes it to have been, it appears that Penn incurred no hazard, and had a sure-prospect of profit to a large amount; and that the whole risk and loss were Pirtles.
lt is intrinsically improbable, therefore, that Pirtle ever agreed that Penn should be entitled to more than one half of the gross proceeds of the publication. But it is enough that there is no proof that Penn contributed more than Pirtle did to the joint stock, or that he was to have more than an equal joint interest; and,, therefore, according to proper deductions from the pleadings, the law will give him no more.
From this view of the case, it would seem, that, under the circumstances of this case, Pirtle is entitled to a decree for an account, and for securing to him his equal control over the books, and correspondent participation in the sale or disposition of them, by a partial injunction or otherwise, so as to effect that end most securely and appropriately. And consequently the absolute dismission of the bill was improvident.
Respecting Penn’s claim for damages for loss, alleged to have accrued from Pirtle’s objections to paper, it is proper only to suggest, that, were there no other objections to such a claim, the fact that there was nothing either sinister, wrongful, or compulsory in Pirtle’s suggestions on that subject, is a full and sufficient answer to this pretension to damages.
Nor does it appear that Pirtle is entitled to any allowance for the alleged delinquencies of Penn in Superintending the publication of the work.
*252 Testing the rights of the parties by any thing now appearing, each is entitled to one half of the proceeds of the books, and to an equal right of disposition and control — no damage to either of them, from the improper conduct of the other, during the pendency of this suit, has been satisfactorily shown.
Wherefore, it is decreed and ordered, that the decree of the Circuit Court be reversed, and the cause remanded.