[No. 1419.]

MALONEY v. CROW ET AL.

PARTNERSHIP—ACCOUNTING—PRACTICE.

Where a partner has been excluded from the firm, denied his member-
ship, or it has been asserted that he has forfeited and lost his member-
ship, he may maintain a bill against his copartner for an accounting
without at the same time praying for the dissolution of the part-
nership.

*Appeal from the District Court of El Paso County.*

Messrs. BICKSLER & McLEAN and Mr. FRANK McLAUGH-
LIN, for appellant.

Mr. JOHN W. SLEEPER and Mr. GEORGE W. IRWIN, for
appellees.

BISSELL, J., delivered the opinion of the court.

There seems to be no legal question controlling this appeal
on which counsel insist, save that which respects the right
to file a bill against a copartner for an accounting unless
therein he also seeks the dissolution of the firm.   Under the
peculiar circumstances of this case, as well as on a general
view of the question we do not believe the appellant's point
well taken.   It has often been decided that a bill for an ac-
counting without a prayer for a dissolution would not lie.   In
cases wherein that doctrine has been laid down there have been
no matters of fact which would take the case out of the range
of this general doctrine.   We do not understand it to be a
hard and fast rule.   It has been decided and no decisions to the
contrary have been cited by the appellant that there are excep-
tions to this proposition.   One of them which is well recognized
is that the rule will not be observed where the partner has
been excluded from the firm, denied his membership, or it
has been asserted that he has forfeited and lost it and such

a bill is necessary in order to establish his rights as a copartner. Wherever this has been the fact courts have permitted him to file a bill, decreed an accounting, and thereby establish the excluded member's rights. 2 Bates on Partnership, sections 913, *et seq.;* 2 Lindley on Partnership, \*496, \*497 ; *Harrison v. Armitage,* 4 Mad. 143 ; *Richards v. Davies,* 2 Russ. & M. (11 Eng. Ch. Rep. 347) ; *Blisset v. Daniel,* 10 Hare, \*493 (44 Eng. Ch. 478) ; *Pirtle v. Penn,* 3 Dana, 247 ; *Hartman v. Woehr et al.,* 18 N. J. Eq. 383.

We concede of course that there are some cases which announce the rule for which the appellant contends without qualification, but we do not believe that this is the law and we are without the inclination to follow any such adjudications when it has not been so universally determined as to force the conclusion that it is substantially an universal one. It ought not to prevail in equity because under many circumstances and particularly under circumstances like those which exist in the present case, its adoption would compel the courts to work out inequities.

When this legal proposition is determined against the appellant all substantial difficulties are removed. We do not intend to state the entire case as made by the proof, nor reason out a justification for the findings of the court or its decree which has done substantial justice. We shall take the court's findings, stating them generally, and only refer to such other facts as are essential to a statement of the controversy.

The Anchoria-Leland Mining Company was the owner of a property in Cripple Creek and made a lease of a certain part of it. The parties interested were Crow, Love, and Mrs. Love, Mrs. Cooper, and C. T. Jackson. After the lease was obtained the parties went to work under its terms, sunk shafts, and did other work incidental to exploration. There seems to have been a provision in the original agreement of lease, or if no such provision, a contract to that end was ultimately made by the corporation with the lessees that the lease should run to the 1st of November, 1895, and under certain conditions there should be a renewal or extension of it until the

30th of April then next ensuing. The lessees went into possession, prosecuted their work, and gave sundry and divers subleases to other parties, giving them the right upon certain conditions as to royalty to work particular sections of the block of ground which had been leased to the original parties. It appears that most of them contained a provision that in case of an extension, the rights under the renewal should be enjoyed by the sublessees, whose subleases should extend for the period covered by the renewals or extensions. Matters proceeded in this way until along in April, 1895, when the present appellant, Maloney, bought out all the parties to the original lease except the interests of Crow and Love. These two parties each owned a quarter and when the sale was made they sold one half of what they held. After this transfer Maloney and these parties continued to occupy and enjoy the profits resulting from their own work, as well as the benefits derived from the subleases, and divided them according to their respective proportions. Jackson dropped out entirely during the time the work was being prosecuted and had no interest when the agreement of extension was procured. Jackson represented them all and did business either in the name of Crow & Company, or J. Crow & Company, or John Crow & Company, and made his settlements and carried on the work accordingly. When Maloney bought he took a transfer from Jackson in whose name all these contracts or leases were made. The correspondence with the Anchoria-Leland Company was between this company and Jackson, and when they agreed to extend it to the 30th of April, 1896, the resolution apparently granted the right to Jackson. The court found as a matter of fact that the firm consisted of the parties named who owned the original lease, and that Jackson procured the extension for the benefit of them all, and that as a matter of fact it was a mining partnership whose only property consisted of this leasehold interest and of the benefits and profits which could be derived from it. After Maloney bought in, he assumed the active management of the property and attended to the shipment of the ore and the col-

lection of the royalties. He collected the royalty from the sublessees, sold the ore which he mined himself, and accounted to Love and Crow for their interest until November when the period of renewal commenced and from that time on he denied Crow and Love any interest in the extension. This denial rested on the assumption that when the sale was negotiated and the transfer made, Jackson assigned the extension and by the terms of the instrument conveyed the whole term, and if there was no intention on his part to transfer the entire interest the legal effect of his contract was to transfer to Maloney all rights secured by the extension. The court found that Maloney did not thereby acquire the entire interest in the extension, but that Love and Crow still retained their proportion of it, and that Maloney was bound to account. There were many peculiar circumstances about it. Maloney bought out some of these sublessees and became a sublessee of himself as well as of these other parties. By the terms of the grant of the sublessee, he thus acquired an interest in the renewal term, for the sublessees were entitled to their interest in the extension, and claiming title under the transfer from the sublessees he would doubtless be bound to account to Crow and Love according to the terms of the sublessees' contract. It is quite true Maloney testified the subleases were not present when the transfer from Jackson was executed and at the time of his purchase, but that they were subsequently produced. But they all contained a provision that the sublessees should have the right to enjoy the term for which the original lease might be extended. There was evidence tending to show that Maloney had full knowledge of the situation and the court was justified on the testimony, in finding that this six months' term which was tacked onto the original lease, inured to the benefit of all the original lessees of which Love and Crow were two. It was also justified in finding that Jackson took it for the benefit of the firm, and that they would have a right under those circumstances to claim an interest in it, and it rightfully concluded that Maloney was fully advised about it, and therefrom de-

duced the legal conclusion that Love and Crow had an interest which was not lost by the Jackson assignment. If this is true, it follows that Love and Crow were entitled to share in whatever profits were made in the working of the leasehold property either by Maloney or the sublessees during the renewal period. At the time the bill was filed, the period for which the firm may be said to have been formed, to wit: the life of the lease and renewal, had not expired. There was also evidence which tended to show that possibly there had been no profits during the time preceding the filing of the bill and the order made for the accounting. However this may be, if the court had, as we have already determined, jurisdiction to entertain the bill because Love and Crow were excluded as copartners from an interest in the lease, we see no objection to maintaining the judgment which was ultimately entered. While the accounting was proceeding before the referee under the direction of the court, the renewal term expired by limitation. Maloney took out a large quantity of ore and sold it and at the time of the ultimate finding and report by the referee there had been very considerable profits. Under that finding and report and testimony, the court adjudged that Crow and Love were entitled to the money which had been paid into court by the sublessees on whom Maloney, Crow, and Love had made demands, and that Crow and Love were entitled on an accounting between them and Maloney, each to receive the specific sum of $1,253.58. The court also allowed, as did the referee, a very considerable sum to Maloney for expenses and for salary, and the result was a statement of an entire account and a decree rendered after the partnership had expired. The court therefore ordered its dissolution, the winding up of the concern, found a particular sum to be due and rendered judgment accordingly. It was this which was appealed from and which our conclusions compel us to affirm.

The case comes up in a peculiar way, but we see no objection to the affirmance of the judgment because of this circumstance. The suit was originally begun by a sublessee

against Maloney, Love and Crow to compel a determination as to the persons to whom the sublessees should pay the money. It might be called a bill of interplea, and the parties all appearing and making answer and filing cross-complaints therein, there was presented the issue which we have determined. We are quite of the opinion that whether there is or is not a deviation from the usual equitable procedure to raise these questions, the issues were sharply and clearly presented and accepted by all parties, and having been tried, and the judgment working out what we believe to be the substantial rights of all the parties in interest, we should be disinclined to disturb the judgment whatever might be our opinion as to the regularity of the proceedings, so long as no fatal objection could be urged to them. The only objection of this character which could be urged we have decided adversely to the appellant. That is the right of a partner to file a bill for an accounting without a prayer for dissolution. Our statute compels us to affirm all judgments which maintain the actual rights of the parties when there has been no substantial error, and under it, if not under general equitable principles and practice, we have a right to affirm this judgment, which is accordingly done.

*Affirmed.*